# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MATTHEW SILVERMAN and      :
AMANDA LISCHKE on behalf of    :
themselves and others similarly situated,  :
                             :   Case No.
      Plaintiffs,           :
                             :
v.                           :   CLASS ACTION COMPLAINT
                             :
MY FINANCIAL SOLUTIONS, LLC,  :
MIRABELLA GROUP, INC. d/b/a FIVE  :
MARKETING GROUP and ANGELA   :
MIRABELLA                :
                             :
      Defendants.

_____/

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.     Plaintiffs Matthew Silverman and Amanda Lischke (collectively referred to as the "Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Angela Mirabella ("Ms. Mirabella") owns and operates a series of companies, including the Defendants My Financial Solutions, LLC ("My Financial") and Mirabella Group, Inc. d/b/a Five Marketing Group ("Mirabella Group") (collectively referred to as "Defendants"). These companies, at Ms. Mirabella's direction, made automated telemarketing calls to cellular telephone numbers of the Plaintiffs which is prohibited by the TCPA.

3.     The Plaintiffs never consented to receive the calls, which were placed to them for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of

thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

4.      A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5.      Plaintiff Matthew Silverman is a resident of the Commonwealth of Massachusetts and this District.

6.      Plaintiff Amanda Lischke is a resident of the Commonwealth of Massachusetts and this District.

7.      Defendant Angela Mirabella is an individual who resides at 20271 SW Acacia St., Suite 200 in Newport Beach, CA 92660. Ms. Mirabella, through the companies she owns and controls, directs telemarketing into this District, as she did with the Plaintiffs.

8.      Defendant My Financial Solutions, LLC is a limited liability company located at 20271 SW Acacia St., Suite 200 in Newport Beach, CA 92660. My Financial Solutions, LLC makes telemarketing calls into this District, as it did with the Plaintiff Matthew Silverman.

9.      Defendant Mirabella Group, Inc. is a California corporation with its principal place of business at 20271 SW Acacia St., Suite 200 in Newport Beach, CA 92660. Mirabella Group, Inc. has a registered agent of RushFiling, Inc., located at 1010 N. Central Ave., Suite 100, in Glendale, CA 91202. Mirabella Group, Inc. makes telemarketing calls into this District, as it did with the Plaintiff Amanda Lischke.

**Jurisdiction & Venue**

10.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing call to the Plaintiffs were placed into this District.

**The Telephone Consumer Protection Act**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

Individual Liability under the TCPA

17.     Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to  47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47. U.S.C. § 217.

18.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985,

*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

19.    This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

20.    Here, Ms. Mirabella both personally participated in the automated telemarketing conduct, as discussed below, and personally authorized the telemarketing conduct.

The Growing Problem of Automated Telemarketing

21.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

22.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

23.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

24.     *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

25.     Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## Factual Allegations

26.     Ms. Mirabella operates companies that are in the business of "cold call" telemarketing individuals with the hopes of placing them with other companies for debt reduction needs.

27.     My Financial Solutions and Mirabella Group, Inc. are two of her entities that engage in this practice.

28.    Defendants' strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

29.    Defendants uses ATDSs that have the capacity to store or produce telephone numbers to be called.

30.    Defendants' ATDSs include predictive dialers.

31.    Defendants also employ the use of pre-recorded messages.

32.    Recipients of these calls, including Plaintiffs, did not consent to receive them.

33.    The Defendants used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

34.    Through this method, the Defendants shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Plaintiff Matthew Silverman

35.    Plaintiff Silverman is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

36.    In February of 2019, Mr. Silverman began receiving automated calls on his cellular telephone line (609) 213-XXX.

37.    When the calls were answered, unlike on a normal call, no one promptly announced themselves. Instead, Plaintiff heard an unnatural click and pause.

38.    A pre-recorded message was also used on the call indicating the use of an ATDS, as it would be illogical to hand-dial a call only to then use a pre-recorded message.

39.     The Caller ID numbers for the calls were all local to the Plaintiff, which further indicated an ATDS, as it would take automated computer equipment to manipulate the Caller ID on a phone call.

40.     On February 5, 2019, Mr. Silverman responded to the pre-recorded message to learn more about the calling party, who was not identified in the pre-recorded message.

41.     During that call, Mr. Silverman was advertised the Defendants' goods and services and received an e-mail from "Luke Olmo", "luke@myfinancialsolutions.org", an employee of My Financial Solutions.

<u>Calls to Plaintiff Amanda Lischke</u>

42.     Plaintiff Lischke is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

43.     In the fall of 2018, Mrs. Lischke began receiving automated calls on her cellular telephone line, (978) 504-XXX.

44.     When the calls were answered, unlike on a normal call, no one promptly announced themselves. Instead, Plaintiff heard an unnatural click and pause.

45.     The Caller ID numbers for the calls were all local to the Plaintiff, which further indicated an ATDS, as it would take automated computer equipment to manipulate the Caller ID on a phone call.

46.     On September 4, 2018, Mrs. Lischke responded to the telemarketing call to learn more about the calling party, who was not identified on the Caller ID.

47.     During that call, Mrs. Lischke was provided with information for Paperback, LLC, who later identified that they obtained Ms. Lischke's information from the Mirabella

Group, Inc. d/b/a Five Marketing Group, who had generated that lead with their telemarketing conduct.

Allegations Common to All Calls

48.     Defendants' purpose in making the call was to sell its services to Plaintiffs.

49.     Plaintiffs have never been a customer of Defendants.

50.     Plaintiffs did not provide prior express written consent to receive ATDS-generated or prerecorded calls from, or on behalf of, Defendants.

51.     Plaintiffs did not provide prior express consent to receive calls from Defendants.

52.     The calls were not necessitated by an emergency.

53.     Plaintiffs' privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

54.     Plaintiffs and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

**Class Action Allegations**

55.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

56.     The class of persons Plaintiffs proposes to represent is tentatively defined as:

All persons within the United States: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

57.     Excluded from the classes are the Defendants, and any entities in which the Defendants has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

58.     The class as defined above is identifiable through phone records and phone number databases.

59.     The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

60.     Plaintiffs are a member of the proposed class.

61.     There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

    a.     Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

    b.     Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

    c.     Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendants' actions.

62.     Plaintiffs' claims are typical of the claims of class members. Plaintiffs' claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

63.     Plaintiffs are adequate representative of the class because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of

the classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

64.    Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

65.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

66.    The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

67.    Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

68.    Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

69.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the

cellular telephone numbers of Plaintiffs and members of the Class using an ATDS and/or artificial or prerecorded voice.

70.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71.     Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

72.     The Defendants' violations were negligent and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiffs request the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiffs as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiffs and the Class of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**


PLAINTIFFS,
By their attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com